Filed 1/22/26  Rosales v. Nissan North America CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ERICK GARCIA ROSALES, | |
| Plaintiff and Appellant, | G063792 |
| v. | (Super. Ct. No. 30-2022-01278853) |
| NISSAN NORTH AMERICA, INC., et al., | O P I N I O N |
| Defendants and Respondents. | |

Appeal from an order of the Superior Court of Orange County, Glenn R. Salter, Judge. Reversed and remanded with directions.

The Lemon Pros, Michael Saeedian and Christopher Urner for Plaintiff and Appellant.

Sweeney and Michael Patrick Sweeney; Shook Hardy & Bacon, Andrew L. Chang and Jason M. Richardson for Defendants and Respondents.

Plaintiff Erick Garcia Rosales filed this "lemon law" lawsuit against defendants Nissan North America, Inc. (NNA) and Stadium Nissan of Orange (Stadium). After the parties reached a settlement, Rosales moved for attorney fees and costs under the Song-Beverly Consumer Warranty Act (Civ. Code, § 1790 et seq.; Song-Beverly Act). Rosales sought a total award of $81,455.83, which consisted of $75,906 in attorney fees and $5,549.83 in costs. The trial court awarded a flat sum of $15,000 and Rosales appealed.

We conclude the trial court abused its discretion by failing to properly apply the lodestar method. We therefore reverse the order and remand the matter to the trial court for further proceedings, with directions to apply the lodestar method to determine the amount of reasonable attorney fees that should be awarded to Rosales and determine and specify the amount of costs Rosales is entitled to recover.

FACTUAL AND PROCEDURAL BACKGROUND

In September 2022, Rosales filed a complaint asserting three causes of action under the Song-Beverly Act against NNA and a cause of action for negligent repair against defendants. The complaint alleged, among other things, Rosales purchased a new car from Stadium in 2020 for $32,962.56, but the car suffered from "serious defects and noncomformities to warranty." NNA and Stadium each filed an answer.

In July 2023, NNA made an offer to settle the action under Code of Civil Procedure section 998. The offer provided, among other things, Rosales would be paid $32,962.56, "which represents the fully financed purchase price of the subject vehicle," and an additional $5,600 in incidental and consequential damages; NNA would deduct from the amount to be paid to Rosales the remaining balance of any active installment loan on the car, which NNA would pay directly to the lender; and Rosales would surrender

the car. Rosales accepted the offer, but the car was involved in an accident before Rosales could surrender it to defendants. In December 2023, Rosales and defendants finalized a settlement that provided a payment to Rosales of $27,853.76 and allowed Rosales to keep the car.[1]

In January 2024, Rosales filed a motion for attorney fees and costs, seeking $75,906 in fees and $5,549.83 in costs, for a total of $81,455.83. Rosales's counsel, Michael Saeedian, filed a declaration in support of the motion. Saeedian declared, among other things, he has practiced law since 2009, is a partner in The Lemon Pros law firm and the founder of a personal injury law firm, and has a billing rate of "$695.00 per hour for all lemon law case work." He further declared Christopher Urner, an attorney at the firm, graduated law school in 2016, "has five years of direct litigation experience in handling lemon law cases from inception through trial" prior to joining The Lemon Pros law firm in 2022, and has a billing rate of "$525.00 per hour for all contingency lemon law work." He declared Jorge Acosta, a certified law clerk,[2] "has worked in the legal industry for more than five years as a certified law clerk," passed the February 2023 bar exam, and has a billing rate of $250 per hour.

Saeedian's declaration stated all of the cases at The Lemon Pros law firm are handled on a contingency fee basis, including this one. It attached copies of the billing records for the case, which Saeedian declared show his firm spent approximately 142.6 hours litigating the case, including

---

[1] A copy of the settlement agreement is not in the record on appeal.

[2] The parties also have referred to Acosta as a paralegal.

time spent on the attorney fee motion. The declaration also attached a memorandum of costs, itemizing a total of $5,549.83 in costs.

NNA filed an opposition, arguing the motion should be denied in its entirety "unless and until [Rosales's] counsel can show the propriety of their billing methods," and "[i]f the court disagrees, the rates should be reduced to $350 per hour, duplicate entries should not be paid, and any entries . . . after Nissan's pre-litigation offer should be diminished significantly." NNA further argued (1) fees incurred in connection with the negligent repair claim are not recoverable as to NNA; (2) fees incurred after an October 6, 2021 pre-litigation offer are not recoverable[3]; and (3) both the hourly rates and the number of hours billed are unreasonable. Rosales filed a reply.

In February 2024, the trial court held a hearing and issued its order on the motion for attorney fees and costs. The court found the "(alleged) billing rates are substantially above the attorney fee rates in the local Orange County legal community for the same or similar work. Even the most experienced Lemon Law attorneys in this community are not awarded fees based on such billing amounts, except in complex cases that require experience. The standard attorney fee rate for non-complex cases runs at about $400 per hour, depending upon an attorney's experience in the field." The court noted Saeedian conceded "he has little experience in Lemon Law cases, having been a (self-described) very successful personal injury attorney since 2009"; Urner had some experience in Lemon Law cases "but even his

---

[3] NNA asserted it "offered to buy back the vehicle on October 6, 2021" before litigation began and "[t]he result ultimately achieved in this litigation was *no better and arguably worse* than what was offered at that early juncture."

experience is vague," and "[a] billing rate of $525 per hour for Urner also far exceeds the rates in the local community"; and "paralegals do not generate $250 per hour in these types of cases." The court also stated the case was "very simple" and "should have settled early on," as "the only complexity is that before the plaintiff returned the vehicle, he was involved in an automobile accident." The court further noted "there was little law and motion practice," "[a] motion to compel arbitration failed," "[a]nd the plaintiff filed several standard discovery motions that were later withdrawn."[4]

The court awarded a flat amount of $15,000 for attorney fees and costs but did not specify what portion of that sum was for fees and what portion was for costs.[5] It also did not state how many hours and what rates it used to calculate the amount of awarded attorney fees.[6]

Rosales filed a notice of appeal from the order.

---

[4] It is not clear how the fact that plaintiff *successfully opposed* a motion to compel arbitration could justify *reducing* the amount of attorney fees awarded to plaintiff.

[5] The trial court said it "came close to denying attorney fees altogether" because of a discrepancy between Saeedian's declaration in support of this motion, which stated his standard billing rate was $695 per hour and his declaration earlier in the case in connection with discovery motions, in which he had declared his billing rate was $500 per hour. Although the court found the discrepancy "concerning," it stated it did not factor the discrepancy into its ruling on the attorney fee request.

[6] At the hearing, Saeedian asked the court for a "breakdown" of how the $15,000 was calculated. The trial court did not respond to that request at the hearing and adopted its tentative ruling as the final ruling.

## DISCUSSION

### I.

### LEGAL PRINCIPLES AND STANDARD OF REVIEW

Under the Song-Beverly Act, a prevailing buyer "shall be allowed by the court to recover as part of the judgment a sum equal to the aggregate amount of costs and expenses, including attorney's fees based on actual time expended, determined by the court to have been reasonably incurred by the buyer in connection with the commencement and prosecution of such action." (Civ. Code, § 1794, subd. (d).) By allowing prevailing buyers to recover attorney fees, "'our Legislature has provided injured consumers strong encouragement to seek legal redress in a situation in which a lawsuit might not otherwise have been economically feasible.'" (*Morris v. Hyundai Motor America* (2019) 41 Cal.App.5th 24, 34 (*Morris*).)

"Determining a reasonable attorney fee award in Song-Beverly Act cases "'ordinarily begins with the 'lodestar,' [which is] the number of hours reasonably expended multiplied by the reasonable hourly rate.'" [Citation.] The lodestar may 'then be adjusted based on factors specific to the case, in order to fix the fee at the fair market value of the legal services provided.'" (*Tidrick v. FCA US LLC* (2025) 112 Cal.App.5th 1147, 1157 (*Tidrick*).) "The Song-Beverly Act's attorney fee provision "'requires the trial court to make an initial determination of the actual time expended; and then to ascertain whether under all the circumstances of the case the amount of actual time expended, and the monetary charge being made for the time expended are reasonable. These circumstances may include, but are not limited to, factors such as the complexity of the case and procedural demands, the skill exhibited, and the results achieved. If the time expended or the monetary charge being made for the time expended are not reasonable

6

under all the circumstances, then the court must take this into account and award attorney fees in a lesser amount. A prevailing buyer has the burden of 'showing that the fees incurred were "allowable," were "reasonably necessary to the conduct of the litigation," and were "reasonable in amount."'"" (*Id.* at p. 1158.) "The lodestar method 'anchors the trial court's analysis to an objective determination of the value of the attorney's services,' and thus ensures the amount awarded is not arbitrary." (*Id.* at pp. 1157–1158.)

"""We review an award of attorney fees under [the Song-Beverly Act] for abuse of discretion. [Citations.] We presume the trial court's attorney fees award is correct, and '[w]hen the trial court substantially reduces a fee or cost request, we infer the court has determined the request was inflated.' [Citation.] 'The "'experienced trial judge is the best judge of the value of professional services rendered in his [or her] court, and while his [or her] judgment is of course subject to review, it will not be disturbed unless the appellate court is convinced that it is clearly wrong.'"" [Citation.] This standard of review applies to a trial court's application of correct legal standards to the circumstances of a specific case." (*Tidrick, supra*, 112 Cal.App.5th at p. 1155.) "The trial court's discretion is "'subject to the limitations of legal principles governing the subject of its action . . . .'" [Citation.] '[T]he determination of whether the trial court *selected* the proper legal standards in making its fee determination is reviewed de novo [citation] and, although the trial court has broad authority in determining the amount of reasonable legal fees, the award can be reversed for an abuse of discretion when it employed the wrong legal standard in making its determination.'" (*Ibid.*)

## II.

### THE TRIAL COURT ABUSED ITS DISCRETION

We conclude the trial court abused its discretion by failing to properly apply the lodestar method.

*Tidrick* is instructive. In that case, the plaintiff settled its Song-Beverly Act claims against the defendant and then filed a motion for attorney fees and costs. (*Tidrick, supra*, 112 Cal.App.5th at p. 1152.) The plaintiff sought $74,275 in attorney fees and $8,444.33 in costs, with the request for attorney fees "based on a lodestar calculation of 173 hours at hourly rates of $415–$500 per hour, the prevailing hourly rate in Orange County." (*Ibid.*) The trial court awarded $15,000 in fees and costs, a reduction of 82.9 percent from the total amount requested. (*Id.* at p. 1153.) The trial court determined hourly rates in Fresno County applied and "concluded rates of $350 per hour for partners, $225 per hour for associates, and $110 per hour for paralegals were 'reasonable.'" (*Id.* at p. 1154.) The trial court "'accept[ed] that the 173 hours of attorney time claimed were based on time actually expended'" but "found such hours were not 'reasonably incurred.'"[7] (*Ibid.*) The trial court

---

[7] *Tidrick* summarized the trial court's reasons as follows: "(1) because the parties failed to provide a copy of the settlement agreement to the court, it was 'possible . . . [it] violate[d] the public policy of the [S]tate of California' and therefore the court 'would be within its discretion to deny an award of any attorney fees to the buyer'; (2) [the plaintiff's] failure to accept [the defendant's] 'repurchase offer under Code of Civil Procedure section 998,' [led] to two years of litigation, which was 'unreasonable on its face'; (3) the number of attorney hours billed seemed unreasonable for a 'simpl[e] [Song-Beverly Act] case that should have been resolved quickly'; and (4) the court had 'no competent or compelling evidence as to whether the final settlement was better than what the defendant initially offered' because the parties failed to provide the court with a copy of the settlement agreement." (*Tidrick, supra*, 112 Cal.App.5th at p. 1154.)

did not specify how many of the claimed 173 hours were not reasonably incurred or what hourly rates it applied to each category of allowable hours. (*Ibid.*) Nor did it specify how much of the $15,000 award was attributable to attorney fees versus costs. (*Ibid.*)

On appeal, another panel of this court concluded "the trial court abused its discretion in failing to apply the lodestar method when calculating [the plaintiff's] attorney fees." (*Tidrick, supra*, 112 Cal.App.5th at p. 1157.) It found the trial court "failed to properly apply the lodestar method in evaluating [the plaintiff's] fee request because it did not multiply the number of reasonably expended hours by the reasonable prevailing hourly rate." (*Id.* at p. 1158.) It explained, "the trial court neither identified the particular number of hours it concluded were reasonably expended nor specified what hourly rate applied to those hours, as required when applying the lodestar method. Instead, the court awarded a total sum of $15,000 for *both* fees and costs, an 82.9 percent reduction from the amount requested." (*Ibid.*)

The *Tidrick* court went on to state, "'[w]hen a trial court applies a substantial negative multiplier to a presumptively accurate lodestar attorney fee amount, the court must clearly explain its case-specific reasons for the percentage reduction.'"[8] (*Tidrick, supra*, 112 Cal.App.5th at p. 1158.) The panel of this court determined, "although the trial court generally criticized the amount of time spent on a 'simpl[e] [Song-Beverly Act] case that should have been resolved quickly,' it did not provide a case-specific reason for

---

[8] We note some courts have disagreed that a heightened standard applies in the context of attorney fees under the Song-Beverly Act. (See *Morris, supra*, 41 Cal.App.5th at p. 37, fn. 6.) Whether or not a heightened standard applies here does not change our conclusion the trial court abused its discretion.

cutting any of [the plaintiff's] attorney fees." (*Id.* at pp. 1158–1159.) It further found, if the trial court had awarded the entire amount of requested costs, then "the remaining $6,555.67 in attorney fees represents an 88 percent reduction, sufficiently large to 'shock the conscience,' particularly where the court failed to articulate case-specific reasons for reducing [the plaintiff's] attorney fees." (*Id.* at p. 1159.) Finally, the panel of this court concluded "the trial court erred by failing to specify what part, if any, of its total award of $15,000 was attributable to costs." (*Ibid.*)[9]

Here, the trial court's ruling on the fee and cost motion suffers from the same flaws as the order that was reversed in *Tidrick*. Faced with a motion seeking almost $76,000 in fees and around $5,500 in costs, the court here awarded a flat sum of $15,000, without specifying what portion of the award was for attorney fees and what portion represented an award of costs. As in *Tidrick*, the court "neither identified the particular number of hours it concluded were reasonably expended nor specified what hourly rate applied to those hours, as required when applying the lodestar method." (*Id.* at

---

[9] *Tidrick* also concluded the trial court erred in applying the hourly attorney rates prevailing in Fresno County, instead of Orange County. (*Tidrick, supra*, 112 Cal.App.5th at pp. 1155–1157.)

10

p. 1158.)[10] Indeed, the court did not state it had applied the lodestar method, either in its order or at the February 2024 hearing. As in *Tidrick*, we conclude the trial court abused its discretion by failing to properly apply the lodestar method. (See *id.* at pp. 1157–1159.)

Defendants insist the trial court actually *did* engage in a lodestar analysis, but they cannot point to any portion of the record in which the court stated the reasonable number of hours it concluded each timekeeper spent on the case and the reasonable hourly rate of each timekeeper. Defendants argue Rosales failed to establish the reasonable amount of fees, and they offer reasons why they believe the requested amount of fees was unreasonable.[11] We need not address whether any of these arguments has merit. The point—and the problem—is that the record does not show the trial court actually applied the lodestar method to calculate the attorney fee award

---

[10] The trial court stated, "[t]he standard attorney fee rate for non-complex cases run at about $400 per hour, depending upon an attorney's experience in the field," and it questioned the experience of Saeedian and Urner. The trial court also stated, "paralegals do not generate $250 per hour in these types of cases." But the trial court never stated what, if any, rates it found would be reasonable for these particular attorneys and paralegal. Additionally, the trial court's statements related to the litigation and amount of requested fees were not materially more informative than the statements found insufficient in *Tidrick*. (See *Tidrick, supra*, 112 Cal.App.5th at pp. 1154, 1158–1159.) The trial court here generally stated the case was simple and should have settled early and noted there was little law and motion practice.

[11] Defendants underscore the trial court's statement that it was concerned by the discrepancy between Saeedian's declared hourly rate in the attorney fee motion and his prior declared rate. But the trial court noted it did not rely on that discrepancy in determining the amount of the award.

11

and does not even reveal how much of the $15,000 award was for attorney fees.[12]

Defendants assert "the trial court's explanation for its award was more than sufficient." We disagree. Defendants point to *Mikhaeilpoor v. BMW of North America, LLC* (2020) 48 Cal.App.5th 240, which noted "trial courts are not required to state 'each charge they find to be reasonable or unreasonable, necessary or unnecessary. . . . A reduced award might be fully justified by a general observation that an attorney overlitigated a case.'" (*Id.* at p. 250.) But in that case, the trial court did not simply award a combined amount of fees and costs that was less than what was requested; it provided information about how it arrived at the amount of attorney fees award, including that it had reviewed the bills and determined a specific reasonable number of hours and reasonable hourly rate. (*Id.* at pp. 245–246, 250, 256.) That is far more than the trial court did here.

*Morris*, another case cited by defendants, is also distinguishable. In that case, the appellate court affirmed an award of $73,864 in attorney fees, which was approximately 42 percent lower than the requested lodestar amount. (*Morris, supra*, 41 Cal.App.5th at pp. 28, 32–34.) But the trial court in *Morris* acknowledged it was required to apply the lodestar method, and it explained how it arrived at the reduced fees it awarded. (*Id.* at pp. 32–34.) Among other things, it stated the amount by which it was reducing the

---

[12] Rosales appears to assume the trial court awarded the full amount of requested costs ($5,549.83) as part of the $15,000. If that assumption is correct, that would make the award of attorney fees $9,450.17 (only approximately 12.4 percent of the amount requested). But we have no basis to make that assumption, and the court erred by leaving us—and the parties—to guess what portion of the $15,000 was attributable to costs. (*Tidrick, supra*, 112 Cal.App.5th at p. 1159.)

attorney hourly rates and made clear its lodestar calculation included only the hours billed by certain attorneys. (*Ibid.*) In short, the trial court in *Morris* not only made clear it was applying the lodestar analysis but explained how it did so—information that is lacking from the trial court's order here.

Defendants also point to *Gorman v. Tassajara Development Corp.* (2009) 178 Cal.App.4th 44, which stated: "In cases where the award corresponds to either the lodestar amount, some multiple of that amount, or some fraction requested by one of the parties, the court's rationale for its award *may be* apparent on the face of the record, without express acknowledgment by the court of the lodestar amount or method." (*Id.* at p. 101; italics added.) But the appellate court made clear *Gorman* was not such a case. Although it agreed "there is no general rule requiring trial courts to explain their decisions on motions seeking attorney fees," it reversed the award, stating it had "been unable to surmise any mathematical or logical explanation for the trial court's award of $416,581.37." (*Ibid.*) We have the same problem with the trial court's award here: We are unable to discern how, *or even if*, the trial court applied the lodestar method, much less divine any mathematical or logical explanation for how the court arrived at its award. The flat, undifferentiated amount awarded by the court for both attorney fees and costs does not correspond to any amount requested by either Rosales or defendants, or in any way reflect a rationale that is apparent on the face of the record.[13]

Additionally, as discussed above, if the trial court intended to award the full amount of costs (something we cannot discern and the order

---

[13] Because we conclude the award must be reversed based on the trial court's failure to apply the lodestar method, we do not address Rosales's other arguments.

does not state), the award of attorney fees ($9,450.17) would represent a reduction of approximately 87.6 percent from the amount requested ($75,906). Such a reduction is sufficiently large to "'shock the conscience'" under the circumstances here, particularly given the record does not explain how it arrived at that amount. (See *Tidrick, supra*, 112 Cal.App.5th at p. 1159 [concluding 88 percent reduction was "sufficiently large to 'shock the conscience,' particularly where the court failed to articulate case-specific reasons for reducing Tidrick's attorney fees"].)

## DISPOSITION

The order is reversed and the matter is remanded to the trial court for further proceedings, with directions to apply the lodestar method to determine the amount of reasonable attorney fees that should be awarded to Rosales and determine and specify the amount of costs Rosales is entitled to recover. Appellant shall recover his costs on appeal.


GOODING, J.

WE CONCUR:


MOTOIKE, ACTING P. J.


SCOTT, J.

14